IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CASIMIR TERRELL CLARK | § | |
| v. | § | CIVIL ACTION NO. 6:07cv340 |
| RUSK POLICE DEPARTMENT, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Casimir Clark, an inmate currently confined in the Hutchins State Jail proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violation of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment pursuant to 28 U.S.C. §636(c).

An evidentiary hearing was conducted on July 15, 2008, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing and in his complaint, Clark stated that on June 27, 2006, while driving through the city of Rusk, Texas, he was pulled over by Officer T. Grimes. She said that he was speeding, but Clark maintains that he was not; Clark states that Grimes had been on the other side of the road and had done a U-turn to pull him over. Grimes asked him for his driver's license and proof of insurance, and Clark told her that he had bought the car from a friend named Mike Sheffield, but the paperwork was not in Sheffield's name and that he, Clark, had not yet changed the title. He did not have insurance at the time, and could not find his driver's license; while he was looking for it, Clark said, he audibly stated that he may have left his license at home.

Clark testified that Grimes told him to get out of the car, but he did not want to because he did not have his license. He then remembered where he had put his license, and reached into the back of his car, got his backpack, retrieved his license, and gave it to Grimes. She again told him to get out of the car, and when he asked her why, she said "because I told you to." Clark again

refused; he testified that Grimes' statement was not an "order" but a "request" and so he did not have to comply.

When Clark again refused, he said, Grimes called for backup. Other officers came and tried to persuade Clark to get out of the car, but he continued to refuse. Clark testified that Grimes did not call in his license and said that this was "not normal"; he insisted that he did not have to get out of the car merely because Grimes had told him to do so.

Clark stated that when he continued to refuse to exit his car, the police officers broke out the rear driver's side window and tried to shock him with a taser. He then got out of the car, and was handcuffed and placed in the back of the patrol car. A search of Clark's backpack turned up a drug called Xanax, which Clark told the officers was not his. Nonetheless, Clark was subsequently convicted of possession of Xanax, receiving a 15-year sentence. Some marijuana was also discovered, although Clark stated that he does not smoke marijuana, and he was also charged with resisting arrest, although he said that all of these charges were rolled into the plea bargain.

Clark reiterated that he was not speeding and that there was no probable cause for telling him to get out of the car. He said that he believed the stop was the result of racial profiling, although he did not indicate that Grimes had made any racial comments. He conceded that Grimes told him that she had clocked him on radar but said that he was "not the only car on the road." Clark argued that Grimes' telling him to get out of the car was not a "lawful order."

On cross-examination, Clark said that he did not roll down his window, but that it was "down enough to talk through." He said that he did not recall being hit with any glass from the window being broken out and acknowledged that he was not actually hit with the taser gun, but only had been threatened with it.

At the evidentiary hearing, counsel for the Defendants presented the video of the incident, taken from Grimes' patrol car. The Court has reviewed this video, which opens with Grimes walking up to Clark's car. She asks him for his driver's license, and Clark says that he doesn't have it. He offers a meandering explanation of how he got the car from Sheffield, who got it from

someone else. Grimes tells him to step out of the car and Clark asks why. Grimes says "because I'm asking you to" and again tells him to step out. Clark apparently finds his driver's license at this point, and Grimes again tells him to step out, which Clark refuses. They argue back and forth, and Grimes takes a step back, apparently to call on the radio for help.

A male officer arrives and talks to Clark, who argues with him, saying that there is no reason for him to step out of the car. Grimes tells Clark to roll down his window because she cannot hear him. Clark also says that he already gave his license to Grimes, but the officer again tells him to step out. Clark then says that he has been abused in the past and that he will not get out without a reason, and the officer says that he has not abused Clark and that the Supreme Court has said that police officers can tell people to get out of their cars. The officer tells Clark that if he does not step out of the car, they will break the window and come in and get him. Clark continues to refuse.

The male officer then walks away from Clark's car over behind Grimes' vehicle, and returns with two other police officers. They again tell Clark to exit his car or they will come in and get him. When Clark continues to refuse, the officers break out a window in his car. They open the driver's side door and remove Clark from the car. He is then placed into one of the patrol cars.

Approximately eight minutes elapse between the time that Grimes first tells Clark to step out of his car and the time that he is removed from the car. During these eight minutes, the officers tell Clark to step out of his car a total of 21 times prior to the breaking of the window and Clark's removal from the car.

Legal Standards and Analysis

As the officer on the scene told Clark, the Supreme Court has stated that police officers have the power to order the driver of a car to exit the vehicle without violating the Fourth Amendment's prohibition against unreasonable seizures. <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 111, 98 S.Ct. 330, 333 (1977) (per curiam); *see also* <u>Maryland v. Wilson</u>, 519 U.S. 408, 413 (1997) (<u>Mimms</u> rule applies to passengers as well as drivers) *and* <u>Rhodes v. State</u>, 945 S.W.2d 115, 118 (Tex.Crim.App. 1997). The courts have held that because law enforcement officials have the right to order the driver

to exit the car, they also have the concomitant power to use appropriate forcible means to enforce this order. *See, e.g.*, Winters v. Adams, 254 F.3d 758. 761 (8th Cir. 2001) (officers acted reasonably in smashing the windows of a vehicle after the occupants rolled up the windows, locked the doors, and refused to exit); Miller v. Page, slip op. no. 04-4198CVCNKL (W.D.Mo., December 28, 2005) (available on WESTLAW at 2005 WL 3557426) (officer did not act unreasonably in breaking vehicle window to extract occupant who failed to respond to request that she roll down window and show her driver's license, and refused to exit car); Barnes v. State, 206 S.W.3d 601, 603 (Tex.Crim.App. 2006) (upholding conviction of driver for interference with a peace officer's public duties, after police officer had to break out window of car to remove driver from vehicle).

In this case, the videotape shows that Clark was told to step out of his car no fewer than 21 times, giving him more than ample opportunity in which to do so. His continued refusal to comply with the police officer's lawful order necessitated the breaking of the car window and his forcible removal from the car. This action by the police officers was not unreasonable under the circumstances. Clark has failed to show a constitutional violation in this regard.

Clark also complained about the circumstances of the traffic stop itself. Although he suggested that the stop was due to "racial profiling," he offered nothing to support this conclusory allegation beyond the bare supposition that it was so. As noted above, Clark acknowledged that Grimes had been on the other side of the road when he passed and that she had done a U-turn to follow him, and that he was not the only car on the road when he passed her. The video makes clear that the stretch of highway where the stop took place is at least four lanes wide, and so in order to target him because of his race, Grimes would have had to be able to see him well enough to identify his race from all the way across the road before deciding to turn around and follow him. Furthermore, Clark conceded that Grimes told him that she had caught him speeding on radar, and the Court is aware that the City of Rusk contains a large hill and a speed limit which drops sharply upon coming into town. In fact, the City of Rusk is listed as a speed trap on a website called "Speed Trap Exchange," sponsored by the National Motorists Association, which claims that there is often

a police car at the bottom of the hill, in a parking lot surrounded by trees, on the west side of the road. *See* http://www.speedtrap.org/speedtraps/ste.asp?state=TX&city= Rusk. In the absence of anything beyond speculation and conjecture to support his assertion that the traffic stop was racially motivated, Clark's claim on this point is without merit.

Finally, Clark complained that the officers "tried to taser him." The police reports show that after the window was broken out, one of the police officers reached into the car to remove Clark, who continued to resist. The officer pulled out his taser gun and told Clark that if he did not comply he would be "tased," and reached into the car with the taser; Clark then exited the vehicle. Clark does not allege that the taser gun was actually used on him.

The videotape shows that even after the window in his car was broken out, Clark continued to resist removal from his vehicle. As noted above, the officers were entitled to use reasonable force to secure compliance with the lawful order to exit the vehicle. Under these circumstances, the threat to use the taser was not unreasonable, particularly in light of the fact that it was not actually used. *See, e.g.*, Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (use of taser to effect compliance with orders in the course of a traffic stop not unreasonable); Price v. Austin Police Department, slip op. no. A-06-CA-832 (W.D.Tex., May 31, 2007) (available on WESTLAW at 2007 WL 1577667 (use of taser on recalcitrant detainee during book-in at police headquarters not a constitutional violation). Clark has failed to show a constitutional violation in this regard and his claim on this point is without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

In this case, Clark's claims lack any arguable basis in law and may therefore be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous. 28 U.S.C. §1915A(b). It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **7** day of **September, 2008.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE